Mikhail Ratner, Esq. (MR-6264)
LAW OFFICE OF MIKHAIL RATNER
*Co-Counsel for Plaintiff*
48 Wall Street, 11th Floor
New York, New York 10005
Tel.: (646) 734-5815
Email: mratner@ratner-law.com

Eugene Strupinsky, Esq. (ES-1976)
LAW OFFICE OF EUGENE STRUPINSKY
*Co-Counsel for Plaintiff*
147 74th Street
Brooklyn, NY 11209
Tel.: (347) 770-7712
Email: eugene@strupinsky.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEVIN CORP. d/b/a "EARLY UPGRADE"<br><br>    Plaintiff,<br><br>   - against -<br><br>SAMSANA GROUP, LLC, JONAH ENGLER, EFRAIN ROSARIO<br><br>and<br><br>ABC CORP. 1-26, d/b/a "WIRELESS ZONE," corporate entities whose exact name names are presently unknown to Plaintiff but who are liable to Plaintiff in this case,<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT** |

Plaintiff Levin Corp., d/b/a "Early Upgrade," by and through its attorneys, as for its Complaint against Defendants Samsana Group, LLC, Jonah Engler and Efrain Rosario allege as follows:

## NATURE OF ACTION

1. Defendants successfully schemed to fraudulently induce Plaintiff into grossly overpaying for a shipment of close to 6,000 pre-owned iPhones by deliberately misstating the actual value of these popular devices. Apparently, Plaintiff was far from the only victim of Defendants' fraudulent scheme.

2. Moreover, the iPhones were sold through a sham company, formed solely for the purpose of shielding individual defendants from personal liability and folded promptly upon discovery of this fraud.

3. There is, thus, every reason for this Court to pierce the corporate veil and to award Plaintiff damages in the amount of at least $300,000, not only against corporate defendant but also against individual defendants, in their personal capacity.

4. Indeed, Defendants' fraudulent scheme was so deliberate and malevolent that it warrants an award of punitive damages in the amount of $1,000,000.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) because (i) there exists a complete diversity of citizenship between all the parties to this case; and (ii) the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C.§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

**PARTIES**

7. Plaintiff Levin Corp. d/b/a "Early Upgrade" is a Florida corporation with its principal place of business located at 11250 Old St. Augustine Road, Suite 15248 Jacksonville, FL 32257.

8. Defendant Samsana Group LLC ("Samsana") is a New York limited liability company whose principal place of business was located at 322 Eight Avenue, New York, NY 10001. On information and belief, Samsana is no longer an active business.

9. On information and belief, defendant Jonah Engler is the Chief Executive Officer ("CEO") and principal member of Samsana.

10. On information and belief, defendant Efrain Rosario is the Chief Operating Officer ("COO") of Samsana and owns membership interest in the company.

11. On information and belief, defendant "ABC CORP. 1" d/b/a "Wireless Zone of Darien, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Darien, CT under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 1's principal place of business is located at 1071 Post Road, Darien, CT.

12. On information and belief, defendant "ABC CORP. 2" d/b/a "Wireless Zone of Greenwich, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Greenwich, CT under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 2's principal place of business is located at 25 Glen Ridge Road, Greenwich, CT.

13. On information and belief, defendant "ABC CORP. 3" d/b/a "Wireless Zone of New Caanan, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in New Caanan, CT under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 3's principal place of business is located at 139 Elm Street, New Caanan, CT.

14. On information and belief, defendant "ABC CORP. 4" d/b/a "Wireless Zone of Southbury, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Southbury, CT under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 4's principal place of business is located at 100 Main Street, Southbury, CT.

15. On information and belief, defendant "ABC CORP. 5" d/b/a "Wireless Zone of Westport, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Westport, CT under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 5's principal place of business is located at 385 Post Road East, Westport, CT.

16. On information and belief, defendant "ABC CORP. 6" d/b/a "Wireless Zone of Denville, NJ" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Denville, NJ under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP.'s principal place of business is located at 18 West Main Street, Denville, NJ.

17. On information and belief, defendant "ABC CORP. 7" d/b/a "Wireless Zone of Marlboro, NJ" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Marlboro, NJ under the "Wireless Zone" franchise from

Verizon Wireless. ABC CORP. 7's principal place of business is located at 87 Route 9 South, Marlboro, NJ.

18. On information and belief, defendant "ABC CORP. 8" d/b/a "Wireless Zone of Dobbs Ferry, NY" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Dobbs Ferry, NY under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 8's principal place of business is located at 50 Livingstone Avenue, Dobbs Ferry, NY.

19. On information and belief defendant "ABC CORP. 9" d/b/a "Wireless Zone of Rye, CT" is a business entity, wholly or partially owned by defendant Engler, that operates a store in Rye, NY under the "Wireless Zone" franchise from Verizon Wireless. ABC CORP. 10's principal place of business is located at 86 Purchase Street, Rye, NY.

20. On information and belief, defendant Engler owns, in whole or in part, and operates up to seventeen (17) additional "Wireless Zone" stores (other than ABC CORP. 1-9) in the New York Metropolitan Area. At this time, Plaintiff does not know the exact locations of these stores,[1] but intends to obtain this information through discovery in this case and add these business entities as named defendants herein.

**FACTS COMMON TO ALL CAUSES OF ACTION**

21. On information and belief, defendant Jonah Engler is owner and operator of multiple "Wireless Zone" stores operating in the New York Metropolitan Area. Engler's "Wireless Zone" stores, like all stores bearing this name, operate under franchise of Verizon Wireless.

---

[1] There are dozens of "Wireless Zone" stores operating in the Tri-State area, only some of which are owned and/or operated by Engler.

22. Engler's "Wireless Zone" stores are in the business of, among other things, selling smartphones directly to the consumers. The stores' product line obviously includes Apple's iPhone, one of the most (if not the most) popular smartphones currently on the market.

23. On information and belief, as part of his business, Engler has a standing policy to buy back used and/or malfunctioning iPhones from existing customers as well as "walk-in" consumers without prior relationship to Engler's stores.

24. There is a robust market for used and/or refurbished iPhones, in the United States, with millions of such pre-owned units being re-sold to consumers across the country. Plaintiff, Levin Corp., operates its business in this market. Based in Jacksonville, Florida, Plaintiff is in the business of buying used and/or malfunctioning iPhones in bulk, and re-selling refurbished units to retailers and directly to consumers

25. On information and belief, sometime before March 2015, Enlger and Rosario concocted a scheme to defraud resellers of pre-owned iPhones.

26. The fraudulent scheme was as simple as it was improper. On information and belief, Defendants would bundle thousands of used and/or malfunctioning iPhones Engler had re-purchased directly from consumers through his "Wireless Zone" stores, at a steep discount, and sell these smartphones, in bulk, to wholesalers, like Plaintiff—with one major caveat: Defendants would fraudulently induce these businesses to purchase Defendants' units at prices that were far above these units' true market value by grossly misrepresenting the state of disrepair of these units. In other words, for example, Defendants would sell a batch of iPhones, which needed major repairs or which were

even beyond repair, at highly inflated prices by falsely describing these units as only needing minor repairs.

27. On information and belief, knowing full well that their fraudulent scheme would be quickly uncovered and they would be pursued by the angry victims of their fraud, Engler, Rosario and their co-conspirators created a sham company, Defendant Samsana Group LLC. On further information and belief, Samsana was nothing more than a front to shield individual Defendants from personal liability upon discovery of their fraudulent scheme. On information and belief, Samsana would nominally own the iPhones; Defendants would sell these phones through this company and pocket their ill-gotten profits; and would quickly close this sham business as soon as their fraudulent scheme was discovered.

28. That is exactly what happened. Samsana was formed on or about March 13, 2015. *See* **Exhibit 1**. It was out of business and shut down—literally within months of its formation, as detailed below.

29. On information and belief, Engler's "Wireless Zone" stores, named here as ABC Corp. 1-26 d/b/a "Wireless Zone," were also central to this scheme. On information and belief, to further disguise Defendants' fraudulent scheme, Engler caused his stores to sell the pre-owned iPhones to defendant Samsana, for nominal consideration. This enabled Defendants to run their fraudulent scheme through Samsana and eventually shut down this sham company, without exposing Engler's valuable "Wireless Zone" stores to liability from Defendants' wrongdoing. On information and belief, such fictitious "sales" of iPhones from Engler's "Wireless Zone" stores to Samsana took place from March 2015 through September 2015, or during Samsana's short-lived existence.

30. Plaintiff, Levin Corp., fell unwitting victim to Defendants' fraudulent scheme. Indeed, on information and belief, Defendants defrauded many re-sellers of pre-owned iPhones. Plaintiff's principal, Simon Levin, knows of at least four (4) other companies who were similarly wronged by Defendants.

31. In Plaintiff's case, specifically, Rosario approached one of Levin's close business associates and an investor in Levin Corp., Michael Koufos, in or about June of 2015 with the opportunity to purchase close to six thousand pre-owned iPhones (models 5, 5c and 5s) for $1,065,255. Given Rosario's representations regarding the condition of these smartphones (which turned out to be completely false), Levin and Koufos believed this price to be fair and agreed to proceed with the purchase. On July 20, 2015, Engler and Rosario caused Samsana to issue an invoice for the aforementioned smartphones, which Plaintiff promptly paid. *See* **Exhibit 2**. As it turns out, both Rosario's assurances to Levin regarding the value of these iPhones and the invoice issued to Plaintiff were false and made as part of Defendants' fraudulent scheme

32. Once Levin received these iPhones, he quickly discovered Defendants' fraud. Out of 5,940 of the iPhones sold by Defendants, 1,822 (or over 30%) were in far worse condition than what Defendants represented to Levin.

33. Levin inventoried the full extent of damage inflicted by Defendants' fraud and presented Defendants with an invoice for $209,530, which was the difference between the "value" of the iPhones, as falsely represented by Defendants, and the actual value of these smartphones in the pre-owned. *See* **Exhibit 3**. Notably, this invoice did not include the wasted time and effort expended by Levin and his associates to inspect and test these iPhones, some of which were beyond repair.

34. Despite Levin's repeated demands that Defendants return to Plaintiff the $209,530 they effectively stole from Plaintiff, Defendants have yet to agree to do so.

35. In fact, on July 22, 2015, Levin travelled to New York, in part, to confront Engler and his associate in person and demand that Plaintiff be made whole. However, when Levin appeared at Samsana's Eight Avenue address, its doors were shuttered and the building management told Levin that the company had gone out of business.

36. Levin later confirmed, through other sources, that Samsana was no longer in business.

37. Subsequently, Levin also learned that defendant Engler has a long history of fraudulent conduct. In his parallel 15-year "career" as a registered broker-dealer, Engler racked up 15 customer complaints with Financial Industry Regulatory Authority ("FINRA") and multiple prosecutions for fraud and/or other types of misrepresentation as well as numerous fines. *See* **Exhibit 4**. Notably, on or about July 1, 2015, FINRA issued an order permanently banning Engler from financial industry. *See id*.

38. The foregoing left Plaintiff with no choice by to file the instant lawsuit.

**AS AND FOR THE FIRST CAUSE OF ACTION**
(Fraud against Engller, Rosario and Samsana)

39. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Defendants Engler and Rosario grossly misrepresented to Levin and Koufos (and in particular, inflated) the actual value of the pre-owned iPhones sold to Plaintiff, in order to fraudulently induce Plaintiff to purchase these iPhones from Defendant Samsana.

41. Defendants' misrepresentations were made in the course of oral communications, during the months of June and early-middle July of 2015, between defendant Rosario and Michael Koufos, and through the false information contained in the invoice issued by defendants Engler and Rosario through defendant Samsana.

42. Defendants' misrepresentations were made knowingly and with the sole purpose of defrauding Plaintiff.

43. Moreover, Defendants Engler and Rosario are personally liable for the fraud they perpetrated through Samsana.

44. As alleged above, Engler and Rosario and their co-conspirators never intended Samsana to be a *bona fide* business, but instead formed the company for the sole purpose of shielding individual defendants from personal liability, after the inevitable discovery of their fraud. On information and belief, Samsana never observed any corporate formalities necessary for the regular course of business. Moreover, on further information and belief, Engler and Rosario used Samsana as their personal "piggy bank," diverting all the ill-gotten funds received by Samsana into their pockets for personal use. On further information and belief, Engler and Rosario always intended, upon discovery of their fraud, to drain Samsana of all of its assets and close down the company, placing their ill-gotten gains out of their victims' reach.

45. Under the foregoing circumstances, it is just and appropriate to pierce the corporate veil and hold Engler, Rosario and all of their co-conspirators, though presently unknown, personally liable for the wrongs alleged herein.

46. As the result of Defendants' fraud, Plaintiff has been injured in the amount to be determined at trial but in no event less than $300,000.

47. Defendants' fraudulent scheme was deliberate and coordinated, to the point of forming a sham company to try to escape personal liability, which is clear evidence of Defendants' malevolent intent and foresight. The foregoing misconduct is so egregious as to warrant punitive damages award against Defendants in the amount to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR THE SECOND CAUSE OF ACTION
(Conspiracy to Defraud against all Defendants)

48. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Defendants' misconduct, as detailed above, amounted to a massive scheme to defraud and induce Plaintiff (and, on information and belief, others) into purchasing pre-owned iPhones at grossly inflated prices and pocketing the ill-gotten proceeds, while illicitly shielding individual defendants from personal liability.

50. As part of this scheme, individual defendants, on information and belief, actively conspired with each other to mislead and keep Plaintiff misinformed as to the truth regarding the actual value of the iPhones sold to Plaintiff.

51. As the result of Defendants' conspiracy to defraud, Plaintiff has incurred damages in the amount to be determined at trial but in no event less than $300,000.

52. Defendants' fraudulent scheme was deliberate and coordinated, to the point of forming a sham company to try to escape personal liability, which is clear evidence of Defendants' malevolent intent and foresight. The foregoing misconduct is so egregious as to warrant punitive damages award against Defendants in the amount to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR THE SECOND CAUSE OF ACTION
(Unjust Enrichment)

53. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. By pocketing $209,530 over and above the actual value of the aforementioned iPhones, Defendants have unjustly enriched themselves in that amount.

55. Allowing Defendants to benefit from their wrongdoing would offend traditional notions of justice and equity.

**WHEREFORE**, Plaintiff asks that the Court issue the following judgment against Defendants:

A. On the First Count, for (i) compensatory damages in the amount to be determined at trial, but in no event less than $300,000; and (ii) punitive damages in the amount of to be determined at trial, but in no event less than $1,000,000;

B. On the Second Count, (i) compensatory damages in the amount to be determined at trial, but in no event less than $300,000; and (ii) punitive damages in the amount of to be determined at trial, but in no event less than $1,000,000;

C. On the Third Count, for compensatory damages in the amount of $209,530

D. Awarding Plaintiff reasonable costs and disbursements incurred in connection with this action, including (without limitation) attorney's fees.

E. Granting Plaintiff such other and further relief the Court deems just and appropriate under the circumstances.

Dated: New York, New York
December 14, 2015

                                              /s/ Mikhail Ratner
Mikhail Ratner, Esq. (MR-6264)
LAW OFFICE OF MIKHAIL RATNER
Co-Counsel for Plaintiff
48 Wall Street, 11th Floor
New York, New York 10005

Eugene Strupinsky, Esq. (ES-1976)
LAW OFFICE OF EUGENE STRUPINSKY
Co-Counsel for Plaintiff
147 74th Street
Brooklyn, New York 11209